UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

QUINTON STROUD,

    Plaintiff,                                        Case number 10-12515
                                                 Honorable Julian Abele Cook, Jr.

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## ORDER

The Plaintiff, Quinton Stroud, challenges a final decision in which the Defendant, the Commissioner of the Society Security Administration ("Commissioner"), concluded that he is neither disabled nor entitled to disability insurance benefits ("DIB") or supplemental social security income ("SSI"). Relying upon the provisions of Rule 56 of the Federal Rules of Civil Procedure, Stroud and the Commissioner have filed cross-motions for summary judgment, with each party proclaiming that there are no genuine issues of a material fact to be resolved by the Court in this legal proceeding.

On July 25, 2011, Magistrate Judge Mark A. Randon, to whom these two dispositive motions had been submitted for an evaluation, produced a report in which he recommended that the Court (1) grant the Commissioner's motion for summary judgment, and (2) deny Stroud's application for dispositive relief. On September 20 - one and a half months after the deadline to do so expired - Stroud filed objections to the report.[1]

---

[1] Stroud states that this delay was due to his never having received the electronically-transmitted report and recommendation. Without making any judgment as to the reasonableness

I.

Stroud, who is in his mid-forties, is a high school graduate who has completed nearly two years of college and trade school training as a millwright. He also has past work experience as an assembler, store manager, and a millwright. However, according to the administrative record, he does not have any acquired work skills that can be readily transferred to other skilled or semiskilled employment. As noted by the magistrate judge, Stroud claims to be suffering from several impairments which the administrative law judge characterized as severe, including human immunodeficiency virus ("HIV"), depression, chronic fatigue, frequent bouts of diarrhea, and occasional nausea. Citing to these impairments, Stroud filed an application for supplemental security income and for a period of disability and disability insurance benefits on February 23, 2004.

When the Social Security Administration initially denied his claim, Stroud sought and obtained a hearing before an administrative law judge, who eventually concluded that he was not a disabled person within the meaning of the Social Security Act.[2] In rendering this opinion, the

---

of this explanation, the Court will nevertheless accept his untimely submission. The Court notes that his objection simply re-raises an argument he made in his motion for summary judgment. In keeping with the requirements of 28 U.S.C. § 636(b)(1), the Court will subject this portion of the report to de novo review.

[2]As the magistrate judge noted, this was the finding of the administrative law judge after a second hearing. The administrative law judge had initially issued a decision on March 13, 2006, in which he found that Stroud, in possessing the residual functional capacity to perform light work (including his past work), was not disabled. However, on March 12th of the following year, the Appeals Council remanded the case to the administrative law judge with instructions to (1) consider the opinions of the treating sources more fully, and (2) further evaluate Stroud's alleged mental impairments and subjective complaints. After conducting a second hearing in September of 2007, the administrative law judge completed the supplemental review and issued another decision on December 20, 2007, with new findings. It is the new findings that are considered in the body of this order.

administrative law judge, while agreeing that Stroud had suffered from several severe impairments, expressed some doubt about the credibility of his claims regarding the disabling nature of some of his symptoms. Specifically, the administrative law judge noted that some of these alleged symptoms were not fully supported (1) by the objective clinical evidence, or (2) his reported activities of daily living. Ultimately, it was the conclusion of the administrative law judge that Stroud did not have an impairment or combination of impairments that met or was medically equal to any of the impairments listed in Part 404 Appendix 1 Subpart P of the Social Security Regulations. The administrative law judge also found that Stroud had retained the residual functional capacity to "perform the exertional and nonexertional requirements of unskilled sedentary" work, even though he was no longer capable of performing his past relevant work as an assembler. (Tr. 37). The administrative law judge reached this decision based, in part, on the testimony of a vocational expert who testified that if Stroud could perform unskilled nonindustrial sedentary work, he could handle the job duties of an information clerk, a video surveillance monitor, a telephone solicitor, and an identification clerk. (*Id.* at 536). The administrative law judge - after giving full consideration of these findings - rejected Stroud's application for benefits on December 20, 2007, because he was able to perform a significant number of unskilled sedentary jobs.

This determination became the final decision of the Commissioner when Stroud's appeal to the Appeals Council was rejected on April 29, 2010. Feeling aggrieved by this outcome, he commenced this lawsuit on June 24, 2010.

## II.

The Social Security Act defines a disability as an "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). When evaluating disability insurance benefit claims, Social Security regulations provide for a mandatory five-step inquiry. *See* 20 C.F.R. § 404.1520. The Sixth Circuit Court of Appeals has explained this evaluation process as follows:

> The claimant must first show that [he] is not engaged in substantial gainful activity. Next, the claimant must demonstrate that [he] has a "severe impairment." A finding of "disabled" will be made at the third step if the claimant can then demonstrate that [his] impairment meets the durational requirement and "meets or equals a listed impairment." If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that [he] is incapable of performing work that [he] has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work.

*Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001) (internal citations omitted).

The final decision of the Commissioner regarding a disability determination is reviewed by a district court to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence" is considered to be more than a scintilla but less than a preponderance. *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Supreme Court, in *Richardson*, stated that this term "means such reasonable evidence as a reasonable mind might accept as adequate to support a conclusion." *Kirk v. Secretary of Health and Human Services,* 667 F. 2d 524, 535 (6th Cir. 1981). Accordingly, "findings based on the credibility of the applicant are to be accorded great weight and deference," and should not be disturbed. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Additionally, the court must evaluate the administrative record as a whole. *Walker v. Secretary of Health and Human*

*Services*, 884 F. 2d 241, 245 (6th Cir. 1989).

III.

Stroud argues that the administrative law judge committed three errors with respect to his disability determinations. He complains that the administrative law judge (1) misapplied the "treating physical rule" in his assessment of the medical evidence, (2) failed to properly analyze the effect of the drug and alcohol abuse on Stroud's impairments,[3] and (3) incorrectly concluded that the HIV condition was not sufficiently severe to meet one of the impairments listed in Part 404 Appendix 1 Subpart P of the Social Security Regulations. The Commissioner disagrees.

As to the first claimed error, Stroud argues that the administrative law judge failed to (1) accurately assess the opinions of his treating physician, Dr. Edward Roberts, and (2) give it controlling weight (which is required if it is supported by medical evidence and is not inconsistent with the other substantial evidence in the case record). 20 C.F.R. § 404.1527. Stroud emphasizes that the administrative law judge rejected Roberts' opinions because he erroneously believed that this medical doctor had downplayed the significance of his substance abuse problems by characterizing it as having only "minimal influence" on his physical limitations. Stroud criticizes this decision and asserts that the administrative law judge did not have any good reason for rejecting the remainder of Roberts' assessments.

However, the magistrate judge correctly notes that the administrative law judge was justified in giving limited consideration to Dr. Roberts' opinions. Observing that Stroud did more than "self-medicate" with "substances" "at times" (as described by Roberts), the magistrate judge correctly

---

[3]It is this argument that is repeated in Stroud's objections. The argument in his objections mirrors that made in his dispositive motion, except that in the former, he states that both the administrative law judge *and* the magistrate judge committed the same error.

5

observed that Stroud admitted to being a life-long alcoholic, along with being a user of powder and crack cocaine, which at one point caused him to expend approximately one hundred fifty dollars each day to purchase crack. (Tr. 298). There were also other legitimate concerns with Roberts' reports, in that he made no mention of a substance abuse diagnosis at all, and diagnosed Stroud as having bipolar disorder with psychotic features, in the face of conflicting information in the official record from other physicians and Stroud. Upon review, and in light of these "good reasons" to decline to give controlling weight to Roberts' opinions, the Court concludes that the administrative law judge properly applied the "treating physician" rule as it relates to this witness.

The Court - like the magistrate judge - is not persuaded that the administrative law judge failed to account for the opinions of Dr. Sudhir Lingnurkar, who only provided a one-page mental residual functional capacity assessment. Although the assessment allowed this doctor to express an opinion as to the degree of limitation that Stroud exhibited in various categories of mental functioning (i.e. understanding and memory, sustained concentration and persistence, social interaction, and adaption), it provides little insight into Stroud's condition because it contains no overall evaluation of his functional abilities. Indeed, as the magistrate judge correctly noted, the range of responses by Dr. Lingnurkar was arguably inconclusive, since he deemed Stroud to be markedly limited in certain areas, but not significantly limited in some categories, and with no limitations at all other areas of functioning. Under the circumstances, the Court agrees with the magistrate judge that the refusal of the administrative law judge to give this opinion controlling weight was substantially justified.

Finally, the Court concludes that the administrative law judge properly characterized the testimony of Dr. Crane, who made note of Stroud's medical conditions, but did not opine that

Stroud's ongoing symptoms would preclude him from performing gainful activity.

The Court, like the magistrate judge, also believes that the administrative law judge's treatment of Stroud's history of alcohol and drug abuse was proper. The administrative law judge's opinion makes clear that he, after thoroughly evaluating the record and without removing the effects of substance abuse disorders from consideration, found Stroud not to be disabled, which, in turn, obviated any need for him to explore, as required by 20 C.F.R. § 404.1535, whether his drug addiction or alcoholism was a contributing factor material to a determination of disability. Stroud appears to argue that the administrative law judge was forbidden from considering his substance abuse for any purpose. However, while the regulations make clear that these issues should not be considered *in the determination of disability* unless and until the claimant is found to be disabled without considering them, 20 C.F.R. §§ 404.1535(a) and 416.935(a), the regulations do not prevent them from properly being considered for other purposes. Here, as noted above, the administrative law judge did not give Dr. Roberts' opinion controlling weight in part because of the inconsistency between his assessment of the severity of Stroud's substance abuse and other evidence in the record. Similarly, the administrative law judge considered Stroud's history of substance abuse relevant to a determination of his credibility. The administrative law judge's references to Stroud's struggle with sobriety for these specific purposes  - and not for the purpose of determining whether Stroud was disabled - were not in error under the circumstances.

The Court must also reject Stroud's assertion that the administrative law judge failed to consider his HIV condition as being sufficiently severe to meet one of the impairments listed in Part 404 Appendix 1 Subpart P of the Social Security Regulations.  On this point, the administrative law judge noted that Stroud's lymphocyte counts (specifically, his "CD4 T-cell count") often dropped

below 200. However, the administrative law judge also noted that "a reduced CD4 count alone does not establish a definitive diagnosis of HIV infection, or document the severity or functional effects of HIV infection." (Tr. 35). Given the evidence, as described by the magistrate judge, that Stroud's medical records show no treatment for opportunistic infections that may result from a low CD4 Count, the administrative law judge's findings that Stroud's HIV condition did not meet the disability listings were appropriate in this regard.[4]

IV.

Accordingly, based on its review of the official record in this case, the Court is satisfied that the decision by the administrative law judge to deny Stroud's application was supported by substantial evidence. Hence, and for the reasons that have been stated above, the Court will, and does, adopt the report of the magistrate judge in full. Therefore, Stroud's motion for the entry of a summary judgment is denied, and the Commissioner's request for identical relief is granted.

IT IS SO ORDERED.

Date: September 30, 2011                                    s/Julian Abele Cook, Jr.
JULIAN ABELE COOK, JR.
U.S. District Court Judge

---

[4] The Court also notes, as did the magistrate judge, that (1) the most substantial weight loss experienced by Stroud occurred before his claimed disability onset date, and (2) any "wasting syndrome" which was alleged by him to have experienced has now been alleviated in light of his current weight, which was characterized by one of the consulting physicians as "obese." (Tr. 36).

8

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on September 30, 2011

s/ Kay Doaks<br>
Case Manager